**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:22-cv-02574

PAULA S. SAWYER, REGIONAL
DIRECTOR OF REGION 27 OF THE
NATIONAL LABOR RELATIONS BOARD,
FOR AND ON BEHALF OF THE NATIONAL
LABOR RELATIONS BOARD,

      Petitioner,

v.

BIG GREEN

      Respondent.

---

**COMPLAINT AND PETITION FOR TEMPORARY INJUNCTION PURSUANT TO
SECTION 10(j) OF THE NATIONAL LABOR RELATIONS ACT**

---

To the Honorable Judges of the United States District Court for the District of Colorado:

Comes now Paula S. Sawyer, Regional Director of Region 27 (the Petitioner) of the National Labor Relations Board (the Board), and petitions this Court, for and on behalf of the Board, pursuant to Section 10(j) of the National Labor Relations Act, as amended[1] (the Act) [29 U.S.C. § 160(j)], for injunctive relief pending final disposition of matters pending before the Board, based upon an administrative complaint issued by the General Counsel of the Board (General Counsel), alleging that Big Green

---

[1] Labor-Management Reporting and Disclosure Act of 1959, ch. 120, 73 Stat. 544; Labor-Management Relations Act, 1947, ch. 120, 61 Stat. 149].

(Respondent) has engaged in, and is engaging in, acts and conduct in violation of Section 8(a)(1), (3), (4) and (5) of the Act, [29 U.S.C. §§ 158(a)(1), (3), (4) and (5)], which, among other things, prohibits employers from discharging employees for engaging in union and protected concerted activities for the purpose of mutual aid and protection. In support of this Petition, Petitioner respectfully shows as follows:

1.      Petitioner is the Regional Director of Region 27 of the Board, an agency of the United States Government, and files this petition for and on behalf of the Board, which has authorized the filing of this Petition.

2.      Jurisdiction of this Court is invoked pursuant to Section 10(j) of the Act, [29 U.S.C. § 160(j)], which provides that "[t]he Board shall have power, upon issuance of a complaint … charging that any person has engaged in or is engaging in an unfair labor practice, to petition any district court of the United States …, within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order."

3.      On April 22, 2021, Kelsey Gray (Charging Party Gray), pursuant to the provisions of the Act, filed with the Board the charge in Case 27-CA-276068 alleging that Respondent has engaged in and is engaging in unfair labor practices within the meaning of Section 8(a)(1) of the Act [29 U.S.C. § 158(a)(1)]. (PX 1).[2] Thereafter, the charge was amended and filed with the Board on May 18, 2021. (PX 2).

---

[2] Petitioner filed, contemporaneous with this Petition, an "Appendix of Exhibits in Support of Petition for Injunction Under Section 10(j) of the National Labor Relations Act" (Appendix of Exhibits).  Accordingly, "PX" will refer to the exhibit number identified in the Appendix of Exhibits.

4.      On the dates set forth below, Denver Newspaper Guild – Communications Workers of America, Local 37074, AFL-CIO (Charging Party Union or Union), pursuant to the provisions of the Act, filed with the Board the charges set forth below alleging that Respondent has engaged in and is engaging in unfair labor practices within the meaning of Section 8(a)(1), (3), (4) and (5) of the Act [29 U.S.C. §§ 158(a)(1), (3), (4) and (5)]:

(a)      The charge in Case 27-CA-280760 was filed by the Charging Party Union with the Board against Respondent on July 30, 2021. (PX 3). Thereafter, the first amended charge was filed with the Board on December 20, 2021, and a second amended charge was filed with the Board on January 7, 2022.  (PX 4-5).

(b)      The charge in Case 27-CA-280764 was filed by the Charging Party Union with the Board against Respondent on July 30, 2021. Thereafter, the first amended charge was filed with the Board on January 7, 2022.  (PX 6-7).

(c)      The charge in Case 27-CA-280819 was filed by the Charging Party Union with the Board on August 2, 2021. Thereafter, an amended charge was filed with the Board on January 7, 2022.  (PX 8-9).

(d)      The charge in Case 27-CA-283572 was filed by the Charging Party Union on September 28, 2021. (PX 10). Thereafter, the first amended charge was filed with the Board on January 7, 2022, and the second amended charge was filed with the Board on August 9, 2022. (PX 11-12).

5.      The aforementioned charges in paragraphs 3 and 4(a) through 4(d) were referred to the Petitioner as Regional Director of Region 27 of the Board.

6.      Following a full and thorough investigation, during which Respondent was given an opportunity to submit evidence and legal arguments, Petitioner determined there is reasonable cause to believe, as alleged in the charges, that Respondent engaged in, and is engaging in, unfair labor practices in violation of Sections 8(a)(1), (3) (4) and (5) of the Act [29 U.S.C. §§ 158(a)(1), (3), (4) and (5)], and affecting commerce within the meaning of Section 2(6) and (7) of the Act [29 U.S.C. §§ 152(6) and (7)].

7.      Based upon the charges filed in this proceeding, and pursuant to Section 10(b) of the Act [29 U.S.C. §. 160(b)], the General Counsel of the Board, on behalf of the Board, by Petitioner, issued a Consolidated Complaint and Notice of Hearing on April 18, 2022.  (PX 13).  Thereafter, the Petitioner issued an Amended Consolidated Complaint on May 11, 2022, and a Second Amended Consolidated Complaint on May 25, 2022, alleging that Respondent has been engaging in unfair labor practices within the meaning of Section 8(a)(1), (3), (4) and (5) of the Act.  (PX 14-15).

8.      An administrative hearing opened before Administrative Law Judge  Dickie Montemayor via Zoom videoconference on June 7, 2022. The hearing continued through and including June 10, 2022, when the parties adjourned for a recess. The administrative hearing resumed on August 22, 2022, and continued until the morning of August 24, 2022, when Counsel for the General Counsel of the Board rested its case-in-chief. The administrative hearing is rescheduled to resume via Zoom on December 6, 2022, and will continue day to day until completed.  (PX 53).

9.      On August 22, 2022, Administrative Law Judge Montemayor granted Counsel for the General Counsel's Motion to Amend the Second Amended

Consolidated Complaint. (PX 16; PX 18 pp. 949).  The Second Amended Consolidated Complaint, as amended, contains the following:

(a)     At all material times, Respondent, a Colorado corporation with a principal place of business in Broomfield, Colorado[3] and regional offices in  Denver, Colorado; Los Angeles, California; Indianapolis, Indiana; Chicago, Illinois; Detroit, Michigan; and Memphis, Tennessee (jointly Respondent's facilities and individually Respondent's Denver facility, Los Angeles facility, Indianapolis facility, Chicago facility, Detroit facility, and Memphis facility), has engaged in the business of growing and supporting a network of learning gardens at schools and community sites across the United States.

(b)     During the fiscal year ending May 10, 2022, which is representative of its annual operations generally, Respondent, in the course and conduct of its business operations described in paragraph 9(a), provided services valued in excess of $50,000 directly to customers outside the State of Colorado.

(c)     At all material times, Respondent has been engaged in commerce within the meaning of Sections 2(2), (6), and (7) of the Act [29 U.S.C. §§ 152(2), (6) and (7)].

(d)     At all material times, the Charging Party Union has been a labor organization within the meaning of Section 2(5) of the Act [29 U.S.C. 152(5)].

(e)     At all material times, the following individuals held the positions set forth opposite their respective names and have been supervisors of Respondent within the

---

[3] Prior to the alleged unfair labor practices described below, Respondent's principal place of business was in Boulder, Colorado.

meaning of Section 2(11) of the Act [29 U.S.C. § 152(11)] and/or agents of Respondent within the meaning of Section 2(13) of the Act [29 U.S.C. 152(13)]:

| | | |
|---|---|---|
| Kimbal Musk | - | Founder |
| Courtney Walsh | - | Communications Director |
| Nicole Alamo | - | Director of Marketing Campaigns |
| Tighe (Hutchins) Brown | - | President |
| Robin Martin | - | Chief Operations Officer (COO) |
| Dianna Zeegers | - | Manager |
| Ava Jackson | - | Manager |

(f)     Since about March 19, 2021, Respondent has maintained and distributed to employees a multi-page set of policies including sections titled (i) Values Based Behavior policy, (ii) Ethics and Standards of Conduct, and (iii) Media Inquiries.  (PX 15).

(g)     The following rule, titled Media Inquiries and referenced above in ` paragraph 9(f)(iii), includes provisions which restrict or prohibit employees' ability to engage in union and/or protected activities including their ability to raise issues about their conditions of employment to the media:

> [E]mployees, visitors, partners and representatives should refrain from speaking to reporters or other members of the media without explicit permission from the President.

(h)   Since about March 19, 2021, Respondent, by COO Robin Martin, enforced the rules described above in paragraphs 9(f) and 9(g) selectively and disparately by applying them only against employees who engaged in protected, concerted activity and/or formed, joined, or assisted the Charging Party Union.

(i)   In or about 2021, in response to employee concerns about racism and bias in the workplace, Respondent created the Diversity, Equity, and Inclusion Council (DEI Council) composed of employees from its various regions across the country.

(j)   About March 19, 2021, employee participants on the DEI Council collectively sent a letter to Respondent raising concerns about Respondent's actions that affected employees' terms and conditions of employment.

(k)   About March 19 and 22, 2021, Respondent, by COO Robin Martin, in separate emails, threatened employees with unspecified reprisals in retaliation for their March 19, 2021, letter referenced above in paragraph 9(j).

(l)   Between about March 22, 2021, and April 30, 2021, Respondent, by COO Robin Martin and President Tighe Brown, over video-conference meetings:

(i)   Interrogated employees about the March 19, 2021 letter referenced above in paragraph 9(j).

(ii)   Made implied threats of unspecified reprisals to employees who created and circulated the March 19, 2021 letter referenced above in paragraph 9(j).

(iii)     Told employees that they could not discuss the substance of their interviews related to the letter referenced above in paragraph 9(j) with one another.

(m)      About July 29, 2021, Respondent, by Manager Dianna Zeegers, over a video-conference call:

(i)      Threatened employees with further discipline and termination for engaging in Union activity.

(ii)      Interrogated employees about their Union activity.

(n)      About July 29, 2021, Respondent, by Manager Dianna Zeegers, over e-mail:

(i)      Threatened employees with termination for engaging in Union activity.

(ii)      Prohibited employees from engaging in Union activity and/or protected concerted activity by telling them they could not speak about Respondent without permission from Respondent's President Tighe Brown.

(iii)      Prohibited employees from engaging in Union activity and/or protected concerted activity by telling them they could not speak about Respondent in a "disparaging" way.

(o)      About July 30, 2021, Respondent, by Manager Ava Jackson, over

phone and text message, prohibited employees from engaging in Union activity and/or protected concerted activity by telling employees they could not speak to one another about their terms and conditions of employment, including about matters involving discipline.

(p)     About July 30, 2021, Respondent, by COO Robin Martin, over a video-conference meeting, interrogated employees about their Union activity.

(q)      About July 29, 2021, Respondent issued a disciplinary warning to employee Colleen Donahoe.

(r)     About July 30, 2021, Respondent suspended employee Odie Avery.

(s)     About September 13, 2021, Respondent terminated employees Odie Avery, Emma Dietrich, Colleen Donahoe, Jenny Tokheim, Amina Bahloul, Erika Hansen, J.P. Miller, Laura Guzman, Margarita Bossa-Bastidas, and Sarah Burns.

(t)     Since about September 13, 2021, and continuing to date, Respondent changed its business operations from employing persons, including the employees identified above in paragraph 9(s), to install, maintain, grow, and support learning gardens at schools and community sites across the United States to disbursing grants and other opportunities, upon application, to schools and community sites across the United States for them to install, maintain, grow, and support learning gardens on their own.

(u)     Respondent engaged in the conduct described above in paragraphs 9(q), 9(r), 9(s), and 9(t) because the named employees of Respondent assisted the Union and engaged in concerted activities, and to discourage employees from engaging in these activities.

(v)     Respondent engaged in the conduct described above in paragraphs 9(s) and 9(t) because the Charging Party Union filed a representation petition with the Board on July 29, 2021, in Case 27-RC-280668 and because employees Odie Avery, Colleen Donahoe, and Erika Hansen attended and testified at a related Board proceeding on August 26 and 27, 2021, and because several of the employees named in paragraph 9(s) attended the hearing in support of the Charging Party Union's petition for an election.

(w)     The conduct set forth above in paragraphs 9(q), 9(r), and 9(s) relates to wages, hours, and other terms and conditions of employment of the Unit and are mandatory subjects for the purposes of collective bargaining.

(x)     Respondent engaged in the conduct described above in paragraphs 9(q), 9(r), 9(s) and 9(w) without prior notice to the Charging Party Union and without affording the Charging Party Union an opportunity to bargain with Respondent with respect to this conduct and/or the effects of this conduct and without first bargaining with the Charging Party Union to an overall good-faith impasse for a collective-bargaining agreement.

(y)    The following employees of Respondent (the Unit) constitute a unit appropriate for the purposes of collective bargaining within the meaning of Section 9(b) of the Act:

> Included: All Project Managers and Program Coordinators employed by Respondent at its facilities in Chicago, IL; Denver, CO; Detroit, MI; Indianapolis, IN; Los Angeles, CA; and Memphis, TN.

> Excluded: All other employees, guards, and supervisors as defined in the Act.

(z)    By about June 28, 2021, a majority of Respondent's employees in the Unit designated the Charging Party Union as their exclusive collective-bargaining representative for purposes of collective bargaining by signing authorization cards.

(aa)    About June 29, 2021, the Charging Party Union, by email from employee Colleen Donahoe, requested that Respondent recognize the Union as the exclusive collective-bargaining representative of the Unit and bargain collectively with the Charging Party Union as the exclusive-collective bargaining representative of the Unit.

(bb)    The serious and substantial unfair labor practice conduct described above in paragraphs 9(m) through 9(x) is such that there is only a slight possibility of traditional remedies erasing their effects and conducting a fair election. Therefore, on balance, the

employees' sentiments regarding representation, having been expressed through authorization cards, would be protected better by issuance of a bargaining order.

(cc)    The allegations described above in paragraphs 9(m)  through 9(x) requiring the issuance of a bargaining order are supported by, among other things:

(i)    The Charging Party Union's request for recognition has been outstanding since June 29, 2021.

(ii)    The conduct described above in paragraphs 9(m) through 9(x) followed immediately on the heels of Respondent's knowledge of the Charging Party Union's campaign.

(iii)    The terminations, disciplines, and threats described above in paragraphs 9(m) through 9(x) were meant to intimidate, discourage, and dissuade employees from supporting the Charging Party Union.

(iv)    There are approximately ten employees in the Unit.

(v)    All Unit employees learned or were likely to learn of the conduct described above in paragraphs 9(m)  through 9(x).

(vi)    The employees described above in paragraph 9(s) constituted the entire Unit.

(vii)    The terminations described above in paragraph 9(s) were directed at all employees in the Unit.

(viii)  Respondent's President Tighe Brown, COO Robin Martin, Manager Dianna Zeegers, and Manager Ava Jackson were high-ranking managers

responsible for the discriminatory conduct described above in paragraphs 9(m) through 9(x).

(ix)    The conduct described above in paragraphs 9(m) through 9(x) has not been retracted.

(dd)    At all times since about June 29, 2021, based on Respondent's  conduct alleged in the Second Amended Consolidated Complaint, as amended, and on Section 9(a) of the Act [29 U.S.C 159(a)], the Charging Party Union has been the exclusive collective-bargaining representative of the Unit.

(ee)    At all times since about June 29, 2021, Respondent has failed and refused to recognize and bargain with the Charging Party Union as the exclusive collective-bargaining representative of the Unit.

(ff)     By the conduct described above in paragraphs 9(f) through 9(h) and paragraphs 9(k) through 9(p), Respondent has been interfering with, restraining, and coercing employees in the exercise of the rights guaranteed in Section 7 of the Act in violation of Section 8(a)(1) of the Act [29 U.S.C. §158(a)(1)].

(gg)    By the conduct described above in paragraphs 9(q) through 9(u), Respondent has been discriminating in regard to the hire or tenure or terms or conditions of employment of its employees, thereby discouraging membership in a labor organization in violation of Section 8(a)(1) and (3) of the Act [29 U.S.C. §§ 158(a)(1) and (3)].

(hh)   By the conduct described above in paragraphs 9(q) through 9(v), Respondent has been discriminating against employees for filing charges or giving testimony under the Act in violation of Section 8(a)(1) and (4) of the Act [29 U.S.C. §§ 158(a)(1) and (4)].

(ii)   By the conduct described above in paragraphs 9(q) through 9(s), 9(w), 9(x) through 9(ee), Respondent has been failing and refusing to bargain collectively with the exclusive collective-bargaining representative of its employees, in violation of Sections 8(a)(1) and (5) of the Act [29 U.S.C. §§ 158(a)(1) and (5)].

(jj)   The unfair labor practices of Respondent described above affect commerce within the meaning of Section 2(6) and (7) of the Act [29 U.S.C. §§ 152(6) and (7)].

10.   Upon information and belief, it may be fairly anticipated that, unless enjoined by this Court, Respondent will continue to engage in the conduct set forth above in paragraph 9 or similar acts in violation of Section 8(a)(1), (3), (4) and (5) of the Act [29 U.S.C. §§ 158(a)(1), (3,) (4), and (5)].

11.   There is imminent danger that substantial and irreparable injury will impact Respondent's employees unless the continuation of the above-mentioned unfair labor practices is immediately restrained. A serious flouting of the Act and of public policies involved in the Act will continue, with the result that enforcement of important provisions

of the Act and of public policy will be impaired before Respondent can be placed under legal restraint through the regular procedures of a Board order and enforcement decree. Unless injunctive relief is immediately obtained, it may fairly be anticipated that Respondent will continue its unlawful conduct during the proceedings before the Board and during subsequent proceedings before a Court of Appeals for an enforcement decree, with the result that employees will continue to be deprived of their fundamental right to engage in protected concerted activity for mutual aid or protection and to be represented for purposes of collective bargaining as provided for in the Act, a harm which cannot be remedied in due course by the Board. It is therefore necessary, just and proper that the effects of Respondent's acts and conduct be dissipated by remedial action on the part of Respondent so that its employees can freely exercise the rights guaranteed them by the Act and their rights not be impeded, impaired or hindered.

12.     Upon information and belief, to avoid the serious consequences set forth above, it is essential, appropriate and just and proper, for the purposes of effectuating the policies of the Act and avoiding substantial, irreparable, and immediate injury to such policies, to the public interest, and to employees of Respondent, and in accordance with the purposes of Section 10(j) of the Act, that, pending the final disposition of the matters involved herein by the Board, Respondent be enjoined and restrained from the commission of the acts and conduct alleged above in paragraph 9, similar acts and conduct, or repetitions thereof.

13.     No previous application has been made by Petitioner for the relief requested herein.

**WHEREFORE**, Petitioner prays:

1.     That this Court issue an Order directing Respondent to appear before this Court, at a time and place fixed by the Court, and show cause, if any there be, why a temporary injunction should not issue enjoining and restraining Respondent, its officers, representatives, supervisors, agents, employees, attorneys, and all persons acting on its behalf or in participation with it, from engaging in the acts and conduct described above, similar or like acts, or other conduct in violation of Section 8(a)(1), (3), (4) and (5) of the Act, or repetitions thereof, and the instant Petition be disposed of on the basis of the briefs and the administrative proceeding transcripts, without oral testimony, absent further order of the Court.

2.     That this Court issue an Order directing Respondent, its officers, representatives, supervisors, agents, employees, attorneys, and all persons acting on its behalf or in participation with it, to cease and desist from the following acts and conduct, pending the final disposition of the matters involved herein by the Board:

(a)     Interfering with, restraining, or coercing employees in the exercise of rights guaranteed by Section 7 of the National Labor Relations Act (the Act).

(b)     Restructuring its business operations because certain employees sought to be represented by the Union for purposes of collective bargaining.

(c)     Terminating employees because certain employees engaged in Union activity and because they sought to be represented by the Union for purposes of collective bargaining.

(d)     Terminating employees because the Charging Party Union filed a representation petition with the Board in Case 27-RC-280668 and because certain employees attended and testified in a related Board proceeding on August 26 and 27, 2021

(e)     Suspending employees for engaging in union activity.

(f)     Disciplining employees for engaging in union activity.

(g)     Threatening employees with discipline for engaging in union activity.

(h)     Threatening employees with unspecified reprisals for engaging in protected concerted activity.

(i)     Interrogating employees about their protected concerted activity.

(j)     Discriminatorily applying its policies to infringe on employees' Section 7 rights.

(k)     Maintaining and distributing overly broad policies infringing on employees Section 7 rights.

(l)     In any like or related manner interfering with, restraining, or coercing its employees in the exercise of the rights guaranteed them in Section 7 of the Act.

3.     That the Court further order Respondent, its officers, representatives, supervisors, agents, employees, attorneys, and all persons on its behalf or in participation with it, to take the following affirmative action necessary to effectuate the

policies of the Act pending the final disposition of the matters involved herein by the Board:

(a)     Recognize and, on request, bargain in good faith with the Union as the exclusive collective-bargaining representative of employees in the following appropriate unit concerning terms and conditions of employment and, if an understanding is reached, embody the understanding in a signed agreement:

> All Project Managers and Program Coordinators employed by Respondent at its facilities in Chicago, IL: Denver, CO; Detroit, MI; Indianapolis, IN; Los Angeles, CA; and Memphis, TN.

(b)     Within a reasonable time, restore Respondent's business operations as they existed prior to September 13, 2021.

(c)     Within five (5) days of the district court's order, offer, in writing, reinstatement to their former positions to: Odie Avery, Emma Dietrich, Colleen Donahoe, Jenny Tokheim, Amina Bahloul, Erika Hansen, J.P. Miller, Laura Guzman, Margarita Bossa-Bastidas, and Sarah Burns; or, if those positions no longer exist, to substantially equivalent positions without prejudice to seniority or any other rights and privileges previously enjoyed, displacing, if necessary, any employee who may have been hired or reassigned to replace them.

(d)     Immediately temporarily rescind the unlawful discipline issued to Odie Avery and Colleen Donahoe and do not rely on it in assessing any future disciplinary actions.

(e)      Within 14 days of the resumption of Respondent's business operation as it existed prior to September 13, 2021, rescind all its unlawfully applied and/or overly broad policies.

(f)      Within seven (7) days from the date of the District Court's Order, Respondent shall:

i.   Post physical copies of the District Court's Order at Respondent's Denver, CO; Chicago, IL; Detroit, MI; Indianapolis, IN; Los Angeles, CA; and Memphis, TN locations, as well as translations in other languages as necessary to ensure effective communication to Respondent's employees as determined by the Board's Regional Director of Region 27, said translations to be provided by Respondent at Respondent's expense and approved by the Regional Director, on the bulletin board, in all breakrooms, and in all other places where Respondent typically posts notices to its employees at the Denver, CO; Chicago, IL; Detroit, MI; Indianapolis, IN; Los Angeles, CA; and Memphis, TN offices; maintain these postings during the pendency of the Board's administrative proceedings free from all obstructions and defacements; grant all employees free and unrestricted access to said postings; and grant to agents of the Board reasonable access to its worksite to monitor compliance with this posting requirement;

ii.  Distribute electronic copies of the District Court's Order, as well as translations in other languages as necessary to ensure effective communication to Respondent's employees as determined by the Board's Regional Director of Region 27, said translations to be provided by Respondent at Respondent's expense and approved by the Regional Director, to all employees employed by Respondent in the United States and its Territories via email and all other intranet or internet sites or apps that Respondent uses to communicate with employees;

iii.  Convene one or more mandatory meetings, on working time and at times when Respondent customarily holds employee meetings and scheduled to ensure the widest possible attendance, at Respondent's Denver, CO; Chicago, IL; Detroit, MI; Indianapolis, IN; Los Angeles, CA; and Memphis, TN offices, during which the District Court's Order will be read to all employees, supervisors, managers, and agents, or at Respondent's option, by an agent of the Board in English. The Employer shall also afford the Union, through the Regional Director, reasonable notice and opportunity to have a representative present when the Order is read to employees. Interpreters shall be made available for any individual whose language of fluency is other than English at Respondent's expense. Respondent shall announce the meeting(s) for the Order

reading in the same manner it would customarily announce a meeting to employees; the meeting(s) shall be for the above-stated purpose only. Individuals unable to attend the meeting to which they have been assigned will be able to attend a subsequent meeting during which the same reading shall take place under the same conditions. Respondent shall allow all employees to attend these meetings without penalty or adverse employment consequences, either financial or otherwise;

iv.   Distribute electronic copies of a high-level Respondent official (in the presence of a Board agent) or a Board agent (in the presence of a high-level Respondent official) reading the District Court's Order, on its intranet or internet sites or apps that Respondent uses to communicate with employees, such that the video can be accessed by employees at all of its stores in the United States and its Territories.

(g)      Within twenty (20) days of the issuance of the District Court's decision and order, file with the District Court, with a copy sent to the Regional Director of the Board for Region 27, a sworn affidavit from a responsible Respondent official setting forth with specificity the manner in which Respondent has complied with the terms of the Court's decree, including how and where the documents have been posted, and the date(s),

time(s), and location(s) that the order was read to employees and by whom, as required by the Court's order.

Dated: Denver, Colorado, this 6th of October 2022.

*Paula S. Sawyer*

_____

Paula S. Sawyer, Petitioner
National Labor Relations Board
Region 27
Byron Rogers Federal Office Building
1961 Stout Street, Suite 13-103
Denver, Colorado 80294

By:

*Noor I. Alam*

_____

**Noor I. Alam, Attorney Reg. No. 5108659 (NY)**
**Jose R. Rojas, Attorney Reg. No. 288237 (CA)**
**Leticia Peña, Attorney Reg. No. 14789 (CO)**
National Labor Relations Board Region 27
Byron Rogers Federal Office Building
1961 Stout Street, Suite 13-103
Denver, Colorado 80294
Telephone: (720) 598-7402
Email: noor.alam@nlrb.gov
           jose.rojas@nlrb.gov
           leticia.pena@nlrb.gov
Counsel for Petitioner