IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-02574-GPG-KLM

PAULA SAWYER, Regional Director, Region 27, National Labor Relations Board,

    Plaintiff,

v.

BIG GREEN,

    Defendant.

_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendant's **Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c)** [#42] (the "Motion"). Plaintiff filed a Response [#45] in opposition to the Motion [#42], and Defendant filed a Reply [#48]. The Motion [#42] has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1. *See* [#43]. The Court has reviewed the Motion [#42], the Response [#45], the Reply [#48], the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion [#42] be **DENIED**.

### I. Background[1]

Plaintiff commenced this action on October 6, 2022. *See Compl.* [#6]. Plaintiff is the Regional Director of Region 27 of the National Labor Relations Board (the "Board"). *Id.* at 1. Plaintiff petitions the Court pursuant to § 10(j) of the National Labor Relations

---

[1] All well-pled facts from the Complaint [#6] are accepted as true and viewed in the light most favorable to Plaintiff as the nonmovant. *See Barnes v. Harris*, 783 F.3d 1185, 1191-92 (10th Cir. 2015).

Act (the "Act") for injunctive relief pending final disposition of unfair labor practice matters pending before the Board. *Id.* at 1.

Defendant is a corporation engaged in the business of growing and supporting a network of learning gardens at schools and community sites across the United States. *Id.* at 5. Defendant employed project managers and program coordinators at facilities in Chicago, Denver, Detroit, Indianapolis, Los Angeles, and Memphis. *Id.* at 11. Plaintiff alleges that these employees constituted a unit appropriate for collective bargaining and union representation under the Act (the "Unit"). *Id.* at 11. Plaintiff alleges that by about June 28, 2021, a majority of Defendant's employees in the Unit designated the charging party union, the Denver Newspaper Guild, Communications Workers of America, Local 37074, AFL-CIO (the "Union"), as their exclusive collective bargaining representative by signing authorization cards. *Id.* at 11.

Plaintiff alleges that on or about June 29, 2021, the Union requested that Defendant recognize the Union as the exclusive collective bargaining representative of the Unit and that Defendant bargain with the Union as the representative of the Unit. *Id.* at 11. Plaintiff alleges that at all times since about June 29, 2021, Defendant has failed and refused to recognize and bargain with the Union as the exclusive collective bargaining representative of the Unit. *Id.* at 13. Plaintiff alleges that Defendant has engaged in a series of actions that interfere with, restrain, and coerce employees in the exercise of their rights guaranteed under § 7 of the Act, in violation of § 8(a)(1) of the Act. *Id.* at 13.

Defendant, as part of its company-wide policies, maintained a rule regarding media contact and inquiries that allegedly restricted or prohibited employees' ability to engage

in union and/or protected activities under the Act.  *Id.* at 6.  Defendant allegedly enforced this rule selectively and disparately by applying it only against employees who engaged in protected, concerted activity under the Act and/or formed, joined, or assisted the Union. *Id.* at 7.

On or about March 19, 2021, Defendant's employees who participated in Defendant's Diversity, Equity, and Inclusion Council sent a letter to Defendant raising their concerns over Defendant's actions that affected the employee's terms and conditions of employment.  *Id.* at 7.  Plaintiff alleges that, as a result of this letter, Defendant engaged in a series of actions towards these employees that resulted in interrogations about the letter and union activity, threats of discipline and termination related to the letter and union activity, a disciplinary warning issued to an employee, and a suspension issued to an employee.  *See id.* at 7-9.

On or about September 13, 2021, Defendant terminated ten employees: (1) Odie Avery; (2) Emma Dietrich; (3) Colleen Donahoe; (4) Jenny Tokheim; (5) Amina Bahloul; (6) Erika Hansen; (7) J.P. Miller; (8) Laura Guzman; (9) Margarita Bossa-Bastidas; and (10) Sarah Burns.  *Id.* at 9.  Further, on about September 13, 2021, Defendant began to restructure its business operations such that it no longer employs persons in the positions once held by the ten terminated employees.  *Id.* at 9.

Plaintiff alleges that the disciplinary warning, suspension, terminations, and business restructuring were a response to the protected union-related activities of the ten terminated employees and were intended to discourage future union-related activity.  *Id.* at 10.  Specifically, Plaintiff alleges that the terminations and business restructuring were due to (1) the Union filing a representation petition with the Board on July 9, 2021; (2)

several of the ten terminated employees attending and testifying at a related Board proceeding on August 26 or 27; and (3) several of the ten terminated employees attending the hearing in support of the Union's petition for an election. *Id.* at 10.

Multiple unfair labor practice charges were filed with the Board between May 18, 2021, and August 9, 2022, alleging that Defendant engaged in, and is engaging in, unfair labor practices under the Act. *Id.* at 2-3. Plaintiff, after investigation into the charges, determined that there was reasonable cause to believe that Defendant engaged in, and is engaging in, unfair labor practices under the Act. *Id.* at 4. Based on this determination, the General Counsel of the Board issued a consolidated administrative complaint alleging that Defendant has engaged in, and is engaging in, acts and conduct in violation of § 8(a)(1), (3), (4), and (5) of the Act. *Id.* at 2, 4.

Plaintiff petitions the Court for an injunction pursuant to § 10(j) of the Act pending the final disposition of the unfair labor practice matters above, which are currently pending before the Board. *Id.* at 1. In the petition, Plaintiff seeks several remedies: (1) a temporary injunction to stop Defendant and all related persons from engaging in acts in violation of the Act; (2) an order directing Defendant and all related persons to stop specific acts in violation of the Act; and (3) an order directing Defendant to, among other relief, offer the ten terminated employees reinstatement to their former positions or substantially equivalent positions with backpay while final disposition of the unfair labor practice matters before the Board are pending, remove discipline dispensed to several employees related to protected activity under the Act, and recognize and bargain in good faith with the Union as the exclusive collective bargaining representative of the Unit. *Id.* at 16-18.

In the present Motion [#42], Defendant moves for judgment on the pleadings under Fed. R. Civ. P. 12(c).   *Motion* [#42] at 1.   Defendant argues that Plaintiff's claims and remedies fail as a matter of law regarding seven of the ten terminated employees: (1) Odie Avery; (2) Erika Hansen; (3) Colleen Donahoe; (4) J.P. Miller; (5) Laura Guzman; (6) Margarita Bossa-Bastidas; and (7) Sarah Burns.   *Id.* at 1-2.   Defendant argues that Plaintiff cannot seek or assert claims on behalf of these seven employees ("Releasee Former Employees" or "RFEs") in this matter because they executed valid and binding releases as part of separation agreements that waive their right to recover any individual monetary relief or receive individual remedies.   *Id.* at 2.   Defendant argues that the releases are lawful and enforceable under current Board law.   *Id.* at 3.   Defendant argues that the remedies sought by Plaintiff are individual in nature, including reinstatement, removal of discipline, and collective bargaining with the Union.   *Id.* at 11-12.   In sum, Defendant argues that because the relief sought by Plaintiff on behalf of the RFEs is necessarily precluded by the releases they signed, Plaintiff's claims on behalf of the RFEs fail as a matter of law and therefore judgment on the pleadings in Defendant's favor is appropriate, i.e., that Plaintiff has failed to state a claim for which relief may be granted. *See id.*

Plaintiff in response does not dispute that the Releasee Former Employees signed releases that waived their right to recover any individual monetary relief or receive individual remedies as part of a separation agreement after termination.   *Response* [#45] at 11.   Plaintiff argues that, although the RFEs signed releases, the Board can still seek claims and remedies on their behalf because the Board is not obligated to honor private settlement agreements but may defer in its discretion.   *Id.* at 10.   In exercising that

discretion, the Board will refuse to be bound by any settlement that is at odds with the Act or the Board's policies.  *Id.*  Plaintiff argues that the releases signed by the RFEs have significant faults weighing against the acceptance of the agreements by the Board.  *Id.* at 12-14.   Further, Plaintiff argues that the releases were offered as part of a broader scheme to eliminate union supporters and that the Board should not uphold such agreements.  *Id.* at 14.  Moreover, Plaintiff argues that the Court should not defer to the separation agreements while the underlying unfair labor practice charges and administrative complaint are still pending before the Board.  *Id.* at 11.

## II.  Standard of Review

 Fed. R. Civ. P. 12(c) provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  "Judgment on the pleadings should not be granted 'unless the moving party clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law.'"  *Park Univ. Enters., Inc. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006) (citation omitted).  A motion for judgment on the pleadings made pursuant to Rule 12(c) is reviewed under the same legal standard as a motion for failure to state a claim made pursuant to Fed. R. Civ. P. 12(b)(6).  *Mock v. T.G. & Y Stores Co.*, 971 F.2d 522, 528 (10th Cir. 1992).

The Rule 12(b)(6) standard tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted").  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might

present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).  To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).  That is, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *TON Servs., Inc. v. Qwest Corp.*, 493 F.3d 1225, 1235 (10th Cir. 2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Moreover, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do, [n]or does the complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (internal quotation marks omitted).

### III.  Analysis

Defendant argues that the Board is precluded from seeking claims and remedies on behalf of the RFEs because the Board is bound by *Baylor University Medical Center*, 369 NLRB No. 43 (2020), and *International Game Technology*, 370 NLRB No. 50 (2020) ("*IGT*"), which uphold separation agreements containing releases of claims against employers.  Plaintiff argues that the Board is not bound by this precedent because both cases are distinguishable from the matter at hand.  Rather, Plaintiff argues that the separation agreements should be analyzed under the framework established in *Independent Stave Company*, 287 N.L.R.B. 740 (1987), and that the separation

agreements have significant faults that weigh against holding them enforceable.   The
Court analyzes both issues in turn.

A.     *Baylor* and *International Game Technology*

Defendant argues that Plaintiff cannot seek claims and remedies on behalf of the
Releasee Former Employees because the signed releases contained in their separation
agreements waive all individual claims against Defendant.   *Motion* [#42] at 1-2.   Section
10(j) of the Act authorizes the United States District Courts to grant temporary injunctions
to prohibit alleged unfair labor practices pending the Board's resolution of unfair labor
practice complaints.   The unfair labor practice charges against Defendant are currently
still pending before an Administrative Law Judge ("ALJ") and may be subject to further
review on appeal before the Board.   *See Compl.* [#6] at 1; *see also Response* [#45] at
11.

The Board acts on behalf of the public and seeks enforcement of the Act as a
public agent, not to give effect to a private administrative remedy.   *See Amalgamated*
*Utility Workers v. Consol. Edison Co.*, 309 U.S. 261, 269-270 (1940).   The NLRB is not
statutorily obligated to honor settlement agreements.   *Beverly Cal. Corp. v. N.L.R.B.*, 253
F.3d 291, 294 (7th Cir. 2001); *see also Webco Indus. v. N.L.R.B.*, 90 F. App'x 276, 282-
284 (10th Cir. 2003) (holding that separation agreement between employer and former
employee waiving all employment-related claims was properly disregarded by the Board
when deciding unfair labor practice claims).   In exercising its discretion, the Board upholds
settlements unless a "settlement . . . is at odds with the [NLRA] or the Board's policies."
*Indep. Stave Co.*, 287 N.L.R.B. 740, 741 (1987).   For these purposes, "settlement
agreement" and "separation agreement" are used interchangeably.

Defendant argues that the Board may not pursue individual claims and remedies on behalf of the RFEs because the ALJ is bound by Board precedent, requiring the ALJ to rule that the releases are valid and enforceable.  *See Reply* [#48] at 4; *see also Cal. Saw & Knife Works*, 320 NLRB 224, 289 (1995) (noting that where Board law is well-established, an ALJ is "bound to follow existing precedent" and that absent the Board or Supreme Court reversing Board law, an ALJ is "bound to follow existing law").  Because the individual remedies sought by the Board on behalf of the RFEs violate the terms of the agreement, Defendant asserts that Plaintiff's claims on behalf of the RFEs fail as a matter of law because there is no right to relief and therefore judgment on the pleadings is appropriate.  *Id.* at 4, 10.

Defendant relies on two precedential Board cases in making this argument, *Baylor University Medical Center*, 369 NLRB No. 43 (2020) and *International Game Technology*, 370 NLRB No. 50 (2020).  Defendant's contention is that separation agreements containing releases of claims against employers do not violate the Act and the ALJ *must* uphold such releases based on *Baylor* and *IGT*.  *See Reply* [#48] at 4.

In the first case, *Baylor*, the Board reversed an ALJ's conclusion that the mere offer of separation agreements to departing employees that included waivers of claims, confidentiality, and non-disparagement provisions violated the Act.  *See Baylor*, 369 NLRB.  The Board held that merely offering these separation agreements did not reasonably tend to interfere with, restrain, or coerce employees in the exercise of rights under the Act for three reasons: (1) the agreements were entered into voluntarily; (2) there were no allegations that anyone offered the agreement was unlawfully discharged for conduct protected by the Act; and (3) the agreements were not offered under any

circumstances that would tend to infringe on the separating employees' exercise of § 7 rights or those of coworkers.  *Id.*

In the second case, *IGT*, the Board reversed an ALJ's conclusion that a non-disparagement provision in a standard separation agreement in and of itself violated the Act.  *See Int'l Game Tech.*, 370 NLRB.  The Board, applying *Baylor,* held that the separation agreement was lawful because (1) the agreement was entered into voluntarily; (2) the agreement did not affect pay or benefits that were established as terms of employment; and (3) the agreement had not been proffered coercively or in the context of a labor dispute.  *See id.*

Defendant concludes based on these two cases that the separation agreements signed by the RFEs are valid and binding and must be upheld by the ALJ.  *See Reply* [#48] at 4.  Defendant argues that, as a result, the Board may not seek individual claims and remedies on behalf of the RFEs in their § 10(j) injunction.  *See id.* at 6.  Plaintiff disagrees with Defendant and argues that the Board and the ALJ are not bound by the *Baylor* and *IGT* precedent because these two cases are distinguishable from the matter at hand, and that under the proper framework for analyzing the separation agreements, i.e., *Independent Stave,* they should be held unenforceable.  *See Response* [#45] at 12.

Plaintiff first argues that Defendant's reliance on *Baylor* and *IGT* to conclude that the ALJ must rule in Defendant's favor is inapposite.  *See id.*  Plaintiff points out that *Baylor* and *IGT* dealt solely with allegations of facially unlawful separation agreements offered to departing employees.  *Id.*  More importantly, Plaintiff points out that both *Baylor* and *IGT* lacked underlying labor disputes or allegations of discrimination in violation of the Act.  *Id.*  Plaintiff argues that the Board in *Baylor* and *IGT* was not faced with the issue

10

before the Court here and that the ALJ is not bound to hold that the separation agreements are valid and enforceable. *Id.* According to Plaintiff, the important difference distinguishing *Baylor* and *IGT* from the matter at hand is that the settlement agreements here were signed by the RFEs against the backdrop of a labor dispute and amid preexisting allegations that the RFEs were discriminated against in violation of the Act. *See Compl.* [#6]. Plaintiff argues that these distinguishing factors make Defendant's reliance on *Baylor* and *IGT* inapposite.

Defendant in turn argues that *Baylor* and *IGT* involved unfair labor practice charges and are therefore applicable as binding precedent in this matter. *Reply* [#48] at 4. Defendant is correct that *Baylor* and *IGT* involved unfair labor practice charges. However, the unfair labor practice charge in both cases concerned whether the language and terms of the separation agreements were unlawful on their face in violation of the Act. *See Baylor*, 369 NLRB; *see also Int'l Game Tech.*, 370 NLRB. The issue here is not whether the separation agreements are facially valid, but whether the surrounding circumstances and allegations of unfair labor practices in this matter make the separation agreements unenforceable, and whether these factors make this matter sufficiently different from *Baylor* and *IGT* such that the ALJ may not be bound by their holdings.

The Court is not convinced by Defendant's argument that the ALJ's determination regarding the releases is in essence predetermined by the holdings in *Baylor* and *IGT*. The Court agrees with Plaintiff that there are important differences between this case and *Baylor* and *IGT*. In *Baylor* and *IGT*, the Board made clear that in upholding the separation agreements there were (1) no underlying labor disputes; (2) no allegations that any employee offered a separation agreement had been unlawfully discharged for conduct

protected by the Act; and (3) no allegations that the separation agreements were offered coercively or under any circumstances that would tend to infringe on the separating employees' rights under the Act.

In this matter there are (1) allegations of an underlying labor dispute; (2) allegations that employees offered separation agreements were unlawfully discharged for conduct protected by the Act; and (3) allegations that the separation agreements were offered as part of a broader scheme to eliminate union supporters, i.e., circumstances that would tend to infringe on the separating employees' rights under the Act.  These factors distinguish this case from *Baylor* and *IGT*.  Although the ALJ is required to follow and apply Board precedent, the Court finds that there is a colorable argument by Plaintiff that the ALJ may not be bound by *Baylor* and *IGT* in his or her ruling.  As a result, it cannot be said that the ALJ's decision as to whether the separation agreements are valid and enforceable, barring claims on behalf of the RFEs, is necessarily pre-determined by these two precedential cases.  Defendant has not shown in this respect that the individual remedies sought by the Board on behalf of the RFEs fail as a matter of law because there is no right to relief and therefore that judgment on the pleadings is appropriate.

**B.    *Independent Stave***

Plaintiff further argues that the releases should be analyzed under the *Independent Stave* framework and not in comparison to *Baylor* and *IGT*.  *Independent Stave* is a Board case that established a framework for determining enforceability of private, non-Board settlement agreements.  *See Indep. Stave Co.*, 287 NLRB.  The Board is not required to give effect to all settlements reached by parties to a dispute.  *Indep. Stave Co.*, 287 NLRB at 741.  Moreover, the Board will refuse to be bound by any settlement that is at odds with

the Act or the Board's policies. *Id.* Plaintiff argues that under this framework, the separation agreements have significant faults weighing in favor of holding them unenforceable. *Response* [#45] at 12.

In determining the enforceability of settlement agreements, the Board will consider all the circumstances surrounding the settlement, including "(1) whether the charging party(ies), the respondent(s), and any of the individual discriminatee(s) have agreed to be bound, and the position taken by the General Counsel regarding the settlement; (2) whether the settlement is reasonable in light of the nature of the violations alleged, the risks inherent in litigation, and the stage of the litigation; (3) whether there has been any fraud, coercion, or duress by any of the parties in reaching the settlement; and (4) whether the respondent has engaged in a history of violations of the Act or has breached previous settlement agreements resolving unfair labor practice disputes." *Indep. Stave Co.*, 287 NLRB at 743.

Plaintiff argues that this framework militates against deferral to the separation agreements in this matter. *Response* [#45] at 11. Further, Plaintiff argues that the Court should not give the agreements preclusive effect barring claims and remedies on behalf of the RFEs while the matter is pending before the Board. *Id.* Plaintiff argues that in applying this framework, analysis of the four factors and surrounding circumstances shows that the separation agreements have significant faults. *Id.* at 12.

Regarding the first factor, the Union and the Board are not parties to and were not part of the separation agreement. Moreover, both the Union and the Board object to the separation agreements, a strong factor weighing in favor of disregarding separation agreements. *See Beverly Cal. Corp.*, 253 F.3d at 295 (noting that under established

Board precedent, "a General Counsel's and Charging Party's opposition to a settlement [is] a powerful reason to disregard that settlement").

Plaintiff next argues that the second factor weighs in favor of disregarding the separation agreements.  *Response* [#45] at 13.  This is because at the time the Unit employees signed separation agreements, no charges had been filed regarding their termination, and investigation into other discrimination claims under the Act was still underway.  *Id.*  Plaintiff argues that as a result, it was impossible for the Unit employees to evaluate the reasonableness of the separation agreements in light of the risks inherent in litigation and the current stage of litigation.  *Id.*  Satisfying the first two factors of the *Independent Stave* test have been enough to set aside separation agreements.  *See Beverly Cal. Corp.*, 253 F.3d at 296 (holding that the first and second factors alone justify the NLRB's decision not to honor the settlement agreement).

Regarding the third factor, Plaintiff argues that the Court can infer that economic duress motivated the RFEs to sign the separation agreements based on the surrounding circumstances of their termination and labor struggles.  As to the fourth factor, Plaintiff concedes that there is no history of Defendant breaching settlement agreements or having engaged in violations of the Act.  However, Plaintiff argues that the atmosphere of alleged unremedied unfair labor practices in which the RFEs signed the separation agreements satisfies the fourth factor.  *See A.S.V., Inc.*, 366 NLRB No. 162, *1 (Aug. 21, 2018) (holding that the fourth factor includes situations where employees sign agreements "in an atmosphere of serious, unremedied unfair labor practices).  "It would make little sense to give weight only to unlawful acts committed in the past and to

disregard the immediate context of the agreements at issue." *A.S.V., Inc.*, 366 NLRB at *2.

Plaintiff also argues that in addition to the inadequacy of the separation agreements under the *Independent Stave* framework, it is well-established that the Board will not uphold a separation agreement that "was not a bona fide offer of settlement, but was extended as part of a broader scheme to eliminate union supporters." *Clark Distr. Sys.*, 336 NLRB 747, 751 (2001). Plaintiff argues that here, the Court may infer that the separation agreements were merely part of Defendant's alleged campaign to extinguish the union activity of its employees. *Response* [#45] at 14.

As a threshold matter, Defendant first argues in response that the *Independent Stave* framework is clearly only applicable to separation agreements that are seeking to resolve current charges before the board, and therefore *Independent Stave* does not apply to this matter. *Reply* [#48] at 6. Defendant has provided no authority for this assertion. Further, courts have applied the *Independent Stave* framework to cases where separation agreements were signed before charges were filed with the Board. *See, e.g., Webco Indus., Inc.*, 90 F. App'x at 282-283. Further, several of the pending charges regarding alleged discrimination in violation of the Act were filed with the Board before the RFEs signed the separation agreements. *See Compl.* [#6].

Defendant next argues that the *Independent Stave* framework does not weigh in favor of setting aside the separation agreements. *See Reply* [#48] at 7. For the first factor, Defendant notes that the agreements were entered into knowingly and voluntarily and were executed by the RFEs. *Id.* at 8. For the second factor, Defendant argues that the RFEs were well aware of the alleged violations in this matter and were actively

participating in Board proceedings but still chose to sign the separation agreements. *Id.* at 9. Regarding the third factor, Defendant agrees with Plaintiff that there are no allegations of fraud or coercion in this matter but argues that Plaintiff is wrong in concluding that the Court can infer that economic duress motivated the RFEs to sign separation agreements. *Id.* Defendant notes that Plaintiff does not provide any authority for this assertion. *Id.* As to the fourth factor, Defendant argues that Plaintiff's assertion is unfounded. *Id.* Defendant and Plaintiff agree that Defendant has not breached the separation agreements and has no history of violating the Act. *Id.* Defendant argues that the Court should not find in Plaintiff's favor regarding this factor simply because charges were filed. *Id.*

Based on this analysis, Defendant concludes that Plaintiff cannot satisfy any of the factors of the *Independent Stave* test. *Id.* at 10. As a result, Defendant argues that the separation agreements are valid and binding, and because the Court has discretion to determine that the RFEs are barred from receiving individual remedies, the Court should grant Defendant's Motion [#42]. *Id.* However, the Court finds that Plaintiff has a colorable argument that the *Independent Stave* test applies, and further that the ALJ may find that *Independent Stave* and the surrounding circumstances in this matter weigh in favor of finding the separation agreements unenforceable. Therefore, it is plausible that the ALJ will find that Plaintiff may seek individual claims and remedies on behalf of the RFEs, notwithstanding the separation agreements. Defendant has not shown that Plaintiff's claims on behalf of the RFEs fail as a matter of law because there is no right to relief, and that judgment on the pleadings is appropriate.

16

Defendant must meet a high bar to succeed on a motion for judgment on the pleadings pursuant to Rule 12(c).  *See Park Univ. Enters., Inc.*, 442 F.3d at 1244.  The Court finds that Defendant has not met its burden of showing that it is entitled to judgment as a matter of law.  Plaintiff has asserted plausible arguments that the separation agreements signed by the RFEs *may* not be given deference by the ALJ in the unfair labor practice charges pending before the Board.  In other words, it is not a foregone conclusion that the separation agreements, as a matter of law, preclude Plaintiff from seeking individual claims and remedies on behalf of the RFEs.  Although Defendant *may* ultimately prevail on this argument before the ALJ and Board, the current record does not permit the Court to draw such a conclusion now.  Thus, the Court finds that Plaintiff states a claim for relief that is plausible on its face pursuant to § 10(j) of the Act regarding claims and remedies sought on behalf of the RFEs.  Whether analyzed under *Baylor* and *IGT* or *Independent Stave,* the Court finds that judgment on the pleadings is inappropriate. Accordingly, the Court **recommends** that the Motion [#42] be **denied**.

## IV.  Conclusion

For the reasons set forth above,

IT IS HEREBY **RECOMMENDED** that the Motion [#42] be **DENIED**.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and

legal questions.  *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: April 12, 2023

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge

18